**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 26-cv-23376-JB**

LAZARO CABRERA SUAREZ,

      Petitioner,

v.

WARDEN, KROME SERVICE
PROCESSING CENTER,

      Defendant.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** comes before the Court upon Petitioner Lazaro Cabrera Suarez's Verified Petition for Writ of Habeas Corpus (the "Petition"). ECF No. [1]. Respondent filed a Response in opposition to the Petition. ECF No. [6]. No reply has been filed and the time to do so has passed. Upon due consideration of the parties' submissions, the pertinent portions of the record, and the applicable law, for the reasons explained below, the Petition is **DENIED**.

## I. BACKGROUND

Petitioner, a Cuban citizen currently detained at the Krome North Service Processing Center in Miami, Florida, has been in the custody of the United States Immigration and Customs Enforcement ("ICE") since October 30, 2025. ECF No. [1] at 2, 4; ECF No. [6] at 1, 3.

On May 13, 2026, Petitioner filed the instant Petition. ECF No. [1]. Petitioner challenges the constitutionality of his continued detention pursuant to *Zadvydas v.*

1

*Davis*, 533 U.S. 678 (2001). *Id.* at 6. In addition, Petitioner challenges the revocation of his Order of Supervision. *Id.* at 6–7. In the Petition, Petitioner asks the Court to "[o]rder Respondent to release Petitioner under reasonable conditions of supervision unless [Respondent] demonstrates that removal is significantly likely in the reasonably foreseeable future." *Id.* at 7.

Respondent filed its Response to the Petition. ECF No. [6]. Respondent argues that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6). *Id.* at 4. Respondent argues that although Petitioner "has been detained longer than the six months found to be presumptively reasonable under *Zadvydas*, … Petitioner's own conduct … prevented his removal … and thus prolonged his detention." *Id.*; *see also* ECF No. [6-3] at ¶ 18 ("On March 2, 2026, Petitioner failed to cooperate with his removal to Mexico at the Hidalgo, Texas port of entry."). Respondent also argues that "Petitioner has failed to satisfy his burden of proving there is no significant likelihood that he will be removed" and that "ICE intends to remove Petitioner to Mexico, contingent upon Petitioner's compliance with removal procedures and the Court's lifting of its current order restricting Petitioner's transfer of removal." ECF No. [6] at 5.

On June 16, 2026, Petitioner filed a Motion to Expedite Ruling (the "Motion to Expedite"). ECF No. [7]. In the Motion to Expedite, Petitioner states that he is "completely deaf and mute" and "[i]t is unclear whether Petitioner has been consistently provided a qualified sign language interpreter or other effective communication accommodations." *Id.* at 2. Petitioner further states that, "[a]s a deaf

and mute individual in a detention facility, Petitioner may be unable – without appropriate accommodations – to communicate medical needs or emergencies to staff; understand verbal announcements, instructions, or warnings; participate meaningfully in any custody review; or seek help or protection from harm within the facility." *Id.* at 4.

## II.  ANALYSIS

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a).  Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who shows that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3).

### A.  Petitioner's Detention Does Not Violate Due Process

The Court has jurisdiction over a Petitioner's habeas claim that the length of his detention violates due process. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").  Petitioner is subject to a final removal order, ECF No. [6-6], and, thus, his detention is governed by Title 8 U.S.C. § 1231.  Section 1231(a)(1) requires the Government to effectuate an alien's removal within a ninety-day "removal period." 8 U.S.C. § 1231(a)(1).  During this removal period, the Government must detain the alien.  8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien.").  The government may detain an alien beyond the ninety-day removal period only for a

3

length of time "reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.

In *Zadvydas*, the Supreme Court considered the petitions of two resident aliens who challenged the constitutionality of their detentions pursuant to 8 U.S.C. § 1231(a)(6), which permits the Government to detain an alien subject to a final order of removal beyond the 90-day statutory removal period set forth in § 1231(a)(1). *Id.* at 682. Although no country was willing to accept either alien once they were ordered removed, the Government continued to detain them after the expiration of § 1231(a)(1)'s 90-day removal period. *Id.* at 684-86. The Supreme Court held that a detainee may file a petition for writ of habeas corpus to challenge the reasonableness of their continued detention when the Government is unable to effectuate removal within the 90-day removal period. *Id.* at 687.

The Supreme Court further held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute" because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690, 699. In so ruling, the Supreme Court explained that it is presumptively reasonable for the Government to detain an individual for a period of six months while it effectuates that individual's removal. *Id.* at 701. That said, after this six-month period, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and grant the petition for writ of habeas corpus, "conditioned on any of the various

forms of supervised release that are appropriate in the circumstances . . . ." *Id.* at 699–700.

Accordingly, to state a valid claim under *Zadvydas*, a petitioner must show (1) "post removal order detention in excess of six months," and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id.* (quoting *Zadvydas*, 533 U.S. at 701 ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

Here, the second prong is not met because Respondent has shown that Petitioner's removal *is* likely in the reasonably foreseeable future. ECF No. [6] at 5 ("ICE intends to remove Petitioner to Mexico, contingent upon Petitioner's compliance with removal procedures and the Court's lifting of its current order restricting Petitioner's transfer of removal."); ECF No. [6-3] at ¶ 22; ECF No. [6-10]. Because the second prong of the *Zadvydas* analysis is not met, Petitioner's detention does not violate due process.

### B. Revocation of Petitioner's Order of Supervision

Petitioner challenges the manner in which Respondents revoked his Order of Supervision, and the Court has jurisdiction to review whether agency regulations and procedures were properly followed. *See Kurapati v. U.S. Bureau of Citizenship &*

*Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014); *Fuentes v. Ripa*, No. 26-cv-134, 2026 WL 717982, at *2 (M.D. Fla. Mar. 16, 2026) ("The crux of Fuentes's claims is that ICE failed to comply with its regulations and due process when it revoked his OSUP. . . . Thus, the Court finds that [Section] 1252(g) does not bar Fuentes's claims."); *Barrios v. Ripa, No.* 25-CV-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) (similar); *Lezama Garcia v. Miami Field Off. Dir.*, No. 25-cv-23169, 2026 WL 632351, at *4 (S.D. Fla. Mar. 6, 2026) (similar).

There are several reasons why the Government can revoke an Order of Supervision, including when an alien violates his "conditions of release." 8 C.F.R. § 241.4(l)(1). Upon revocation under this provision, the alien is entitled to notice "of the reasons for revocation" and an informal interview where the alien may "respond to the reasons for revocation." *Id.* § 241.4(l)(1).

An Order of Supervision may also be revoked when, "in the exercise of discretion" of the Executive Associate Commissioner or the district director, "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien[.]" *Id.* § 241.4(l)(2)(iii). A district director may execute the revocation when it "is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.* "Section 241.4(l)(2) does not mention affording the alien notice or an informal interview." *Barrios*, 2025 WL 2280485, at *3.

Section 241.13 is similar when it comes to revoking an Order of Supervision. Under this regulation, an alien's release may be revoked if he or she violates his or

6

her conditions of release. *See* § 241.13(i)(1). The Order of Supervision may also be revoked when "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). An alien is entitled to notice of the reasons of revocation "after his or her return to Service custody" to afford the alien "an informal interview . . . to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3).

Petitioner argues that Respondent "failed to properly revoke the existing Order of Supervision" because he was not provided an explanation for why detention was necessary prior to the revocation of his Order of Supervision.  ECF No. 1 at [6].  However, the Notice of Revocation of Release identifies the reason why Respondents revoked Petitioner's supervision.  ECF No. [6-9].  Given that the Notice of Revocation of Release explained the changed circumstances that warranted revocation, it "was more than enough to put him on notice of the Government's basic rationale for bringing him back into custody. Nothing more was needed to satisfy § 241.13(i)." *Fernandez del Pino v. Warden of Alligator Alcatraz*, No. 26-cv-377, 2026 WL 820476, at \*4 (M.D. Fla. Mar. 25, 2026).  This is not a situation where the revocation notice merely "tracks the regulatory language and fails to describe any changed circumstances," *Fuentes*, 2026 WL 717982, at \*3, which would warrant habeas relief. Further, Petitioner was afforded an informal interview during which he was informed that his Order of Supervision had been revoked, the reasons therefor, and was provided an opportunity to ask questions, which is consistent with the regulations.

7

*See* ECF No. [6-1] at 3.  It is true that "[a]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Fernandez del Pino*, 2026 WL 820476, at \*4 (quoting *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984)).  However, Respondents complied with their own regulations by giving Petitioner notice and an interview.

### C. **Petitioner's Conditions of Confinement Claim**

In his Motion to Expedite, Petitioner challenges the conditions of his confinement.  ECF No. [7] at 2,4.  Because the challenge is to the conditions of his confinement, rather than the *fact* of his confinement, it is outside the scope of habeas relief.  *See Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) ("Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law.").  Moreover, "release from imprisonment is not an available remedy for a conditions-of-confinement claim." *Id.*, 634 F. App'x at 778; *see also Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990) ("The appropriate Eleventh Circuit relief from prison conditions . . . is to require the discontinuation of any improper practices . . . [it] does not include release from confinement.").  Accordingly, Petitioner's claim challenging the conditions of his confinement is dismissed without prejudice because a habeas petition is not the appropriate vehicle to raise this claim.  Such a claim is properly brought, if at all, pursuant to 42 U.S.C. § 1983.  *See Vaz*, 634 F. App'x at 780.

## III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Petitioner the Verified Petition for Writ of Habeas Corpus, ECF No. [1], is **DENIED**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 19th day of June, 2026.

_____

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**